UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RANDALL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 690 CDP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Randall Williams brings this action pursuant to 42 U.S.C. §§ 401 and 1381 *et seq.* and 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income. Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

## I. Procedural History

Plaintiff filed applications for benefits on December 19, 2012. He alleged he became disabled beginning February 15, 2012, because of chronic obstructive pulmonary disease (COPD), shortness of breath, an inability to stand or walk for

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Berryhill is automatically substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action.

extended periods, knee dysfunction, chest pain, high blood pressure, congestive heart failure, hand numbness, insomnia, and anxiety. Plaintiff's insured status under Title II of the Act expired on December 31, 2013.[2]

Plaintiff's applications were initially denied on March 28, 2013. After a hearing before an ALJ on July 21, 2014, the ALJ issued a decision denying benefits on December 1, 2014. On April 9, 2015, the Appeals Council denied plaintiff's request for review. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

<u>Medical Records</u>

On July 5, 2010, plaintiff was evaluated by internist Raymond Leung, M.D. Williams reported having hypertension, coronary heart failure, back and knee pain, numbness of the hands and feet, decreased vision, and headaches. He used a cane to help him walk because "he just had it." Examination showed normal cardiac rate and rhythm with no murmurs. Pulmonary examination was clear to auscultation, with no rales, rhonchi, or wheezes, and normal percussion and AP diameter. Plaintiff's gait, without his cane, was stiff. Plaintiff walked with a minimal limp with his cane. He was able to tandem walk and hop, heel walk, toe

---

[2] To be entitled to disability insurance benefits under Title II of the Act, plaintiff had the burden to show that he was disabled prior to the expiration of his insured status on December 31, 2013. <u>See</u> <u>Moore v. Astrue</u>, 572 F.3d 520, 522 (8th Cir. 2009). To be entitled to supplemental security income, plaintiff must show that he was disabled while his application was pending. <u>See</u> <u>Steed v. Astrue</u>, 524 F.3d 872, 874 n.2 (8th Cir. 2008).

walk, and squat. Straight leg raising with the right leg was limited to 70 degrees and 85 degrees on the left leg. Plaintiff had a decreased range of motion in his lumbar spine and knees, with no muscular atrophy or spasms. His pinch, grip, arm, and leg strength were 4+/5, and plaintiff had no difficulties getting on and off the exam table. Plaintiff had decreased sensation to pin prick in his left hand and mild decreased vibratory sensation in his feet. Proprioception in the toes was within normal limits and his reflexes were normal. Plaintiff had no edema and normal distal pulses in his extremities. After examination, Dr. Leung's impression was hypertension controlled, congestive heart failure with normal lung examination, back and knee pain, numbness of the hands and feet, decreased vision, and headaches. (Tr. 463-68).

On October 16, 2012, plaintiff saw Vani Pachalla, M.D., for a medication refill and follow up for his congestive heart failure. Plaintiff's condition was noted to be stable. Plaintiff reported chest pain, increased fatigue, orthopnea, palpitations and shortness of breath, but no swelling, frequent urination, impotence, irritability, ulcers, or weight gain. Examination revealed normal respiratory sounds, with clear lungs, and a normal heart rate and rhythm with no murmurs, gallops, or rubs. Plaintiff had no abnormalities in his back or spine but trace edema on his lower leg. Dr. Pachalla noted that plaintiff was non-compliant with his current therapy and medication regimen and had missed many of his cardiac follow-up

appointments. Plaintiff admitted smoking and was diagnosed with nondependent tobacco use disorder. Plaintiff and his wife were counseled on his diagnosis, and Dr. Pachealla ordered lab work. (Tr. 308-10).

On November 18, 2012, plaintiff went to the emergency room complaining of chest pain. Examination revealed normal heart rhythm, regular breath sounds, no edema in extremities, and a full range of motion with no inflammation. A stress test revealed abnormal myocardial perfusion with a small to medium area of mild ischemia in the inferolateral wall and normal LV systolic function. An echocardiogram showed normal systolic function with an ejection fraction in the 55 to 65 percent range. There were no regional wall motion abnormalities and wall thickness was normal. A cardiac cath test was also performed and revealed that the left ventricular function was at the lower end of the normal range, with a visually estimated ejection fraction of 45 to 50 percent. The coronary arteries and left and right heart hemodynamics were normal. There was minimal or mild mitral regurgitation. Plaintiff was discharged on November 21, 2012, with the diagnoses of chest pain, likely related to congestive heart failure or COPD, COPD, systolic and diastolic congestive heart failure, hypertension, hypersensitivity lung disease, tobacco abuse, depression, and acute respiratory failure. (Tr. 316-79).

Plaintiff returned to the emergency room on December 7, 2012, complaining of a headache and nausea. He said it had lasted about a week, but he denied having

a fever or vomiting. Upon examination, plaintiff's breathing sounds were normal, his heart rate and rhythm were regular, and he had no focal pain in any muscle or joint groups. His reflexes, mood, and affect were normal. A CT scan of his head was normal. He was diagnosed with a headache and discharged. (Tr. 432-57).

On January 24, 2013, plaintiff saw Susana Lazarte, M.D., for a follow up visit for chest pain. Dr. Lazarte noted that plaintiff's November test results showed only mild ischemia, normal coronaries, and only mild diastolic dysfunction. Plaintiff reported feeling depressed and worried that he could have a serious disease. Plaintiff's physical examination was within normal limits, but he displayed a depressed affect, anhedonia, and anxiety. Dr. Lazarte noted that plaintiff was compliant with his medication regimen, his relative risk was improving, and he was responding to current treatment. Dr. Lazarte adjusted plaintiff's medication. (Tr. 569-72).

On February 18, 2012, plaintiff saw cardiologist Alan Zajarias, M.D. Plaintiff's diagnoses were listed as hypertension, dyslipidemia, nonischemic cardiomyopathy, with a mildly decreased ejection fraction, and tobacco abuse. Plaintiff reported that he had stopped smoking. He complained of migraine headaches and occasionally feeling winded but denied angina, syncope, presyncope, orthopnea, or PND. Dr. Zajarias noted that plaintiff's medical compliance was intermittent. Physical examination was normal, with a regular

heart rate, clear breath sounds, and no edema in extremities. Dr. Zajarias continued plaintiff's medications, ordered lab work to check plaintiff's brain natriuretic peptide, and referred him for a sleep study. Plaintiff's BNP test results were all within normal limits.

On June 3, 2013, plaintiff saw Maria Del Rosario Bobadilla for depression. Plaintiff reported feeling anxious, fearful, depressed, worthless, and indecisive. Plaintiff claimed he had poor concentration, hallucinations, changes in appetite, sleep disturbance, and thoughts of death or suicide. Plaintiff was noted to have the symptoms of a major depressive episode. Plaintiff reported having a history of suicidal thoughts and claimed to hear voices telling him to end his life, but he denied having a plan. He was encouraged to take his medication and continue counseling. Clinical assessment was unspecified psychosis and his GAF score was 43. (Tr. 565).

Plaintiff saw Miranda Coole, M.D. on June 19, 2013, for depression. Plaintiff told Dr. Coole that he was having extreme difficulties meeting home, work, and social obligations. He reported depressed mood, diminished interest, fatigue, feelings of guilt or worthlessness, changes in appetite, sleep disturbance, and thoughts of death or suicide. Plaintiff stated that had thoughts and plans of suicide, his suicidal thoughts were "much worse" than they had ever been before, and he was worried he might try to electrocute himself or jump in front of a car.

Physical examination yielded normal results. Dr. Coole diagnosed depression with anxiety and discussed emergency treatment options for suicidal thoughts and plans. (Tr. 563-64). Plaintiff went to the emergency room later that day for increased depressive symptoms and suicidal ideations and was hospitalized for bipolar disorder, major depressive disorder, and cluster B traits until June 22, 2013. (Tr. 392). Physical examination upon admission showed normal cardiac rhythm and heart sounds, normal breath sounds, a normal range of motion, no edema, and normal muscle tone. (Tr. 395).

Plaintiff saw Dr. Coole again on July 17, 2013, complaining of swelling in his ankles and legs and joint pain. Plaintiff denied chest pains, cough, orthopnea, or shortness of breath. Dr. Coole noted plaintiff's history of congestive heart failure, hypertension, non-ischemic cardiomyopathy, and positive ANA. Dr. Coole observed edema in the extremities, but physical examination was otherwise within normal limits. Dr. Coole diagnosed congestive heart failure and increased his medication. She also referred him to a rheumatologist and a behavioral health specialist. (Tr. 555-57).

At his next visit on July 31, 2013, plaintiff told Dr. Coole that he was having shortness of breath in the morning and at night. His physical examination was normal, with no edema in the extremities, regular heart rate and rhythm, and

normal breath sounds.  Dr. Coole's assessment was congestive heart failure.  She renewed plaintiff's medications.  (Tr. 545-47).

Plaintiff began therapy for his depression with John Rajeev, LCSW, on August 5, 2013.  Plaintiff reported having mood swings, irritability, and crying spells.  Mr. Rajeev's assessment was moderate, recurrent major depression and he assigned plaintiff a GAF score of 50.  (Tr. 542-43).  Plaintiff had sessions with Mr. Rajeev again in September and October of 2013.  Plaintiff denied suicidal thoughts and was encouraged to continue with his medications.  His assessment and GAF scores remained unchanged.  (Tr. 528-32).

Plaintiff saw Dr. Coole for a medication refill on September 17, 2013.  At that visit, plaintiff reported feeling lightheaded, claiming it affected his ability to lift, sit, stand, and walk.  He also reported falling, pain, and unsteadiness, but he denied having chest pain, dizziness, dysphasia, fever, gait change, numbness, or weakness.  Plaintiff said he felt sleepy during the day, dropped things for no reason, sometimes lost his balance, snored, and had sleep apnea.  Plaintiff also stated he had joint pain with decreased mobility, instability, limping, swelling, and tenderness.  He reported using a cane and told Dr. Coole that he wanted a prescription for a cane so he could take it with him on a trip.  Physical examination yielded normal results, with normal heart and breath sounds and no edema or tenderness.  Dr. Coole assessed plaintiff's congestive heart failure as stable, gave

him the requested prescription for a cane to "use daily as directed for joint pain," and ordered a sleep study. (Tr. 534-37).

On December 13, 2013, plaintiff was evaluated for lupus by Julie Unk, ANP. Plaintiff complained of shortness of breath, back pain, knee pain, numbness and tingling of the hands, and insomnia. Ms. Unk noted that he was seen in the clinic two years before for an evaluation of lupus but never had the lab work performed to determine a diagnosis. Ms. Unk noted a positive ANA. Plaintiff denied having any rashes but did report itchy skin. He said he had chest pains and shortness of breath "daily since the 1990s." Plaintiff reported a history of depression and back pain, claiming that he sometimes lost his balance because of pain and used a cane for stability. Plaintiff also stated that he had constant numbness and tingling of his hands which increased at night. Plaintiff told Ms. Unk that he had an accident when he was in 20s, resulting in severed nerves in his left forearm and permanent nerve damage. Plaintiff reported dropping objects due to numbness and tingling. Plaintiff stated he injured his right hand several times and now his hand turns cold and changes color. Plaintiff said his knees were stiff and he had difficulty bending forward to tie his shoes. Plaintiff admitted smoking one pack of cigarettes every four days. Physical examination revealed normal lung and heart sounds, no motor or sensory defects with Tinel's maneuver failing to increase numbness or tingling in hands, no edema, and a normal functional range

of motion with joints, wrists, elbows, shoulders, knees, ankle, and feet all normal in appearance. Imaging of plaintiff's knees, cervical spine, and lumbar spine revealed minimal, bilateral joint space narrowing of the knees, moderate multilevel cervical degenerative disc disease most severe at C5-C6 through C7-T1, and mild degenerative disc disease at L4-L5. Ms. Unk assessed plaintiff with positive ANA, back pain, knee pain, neck pain, and paresthesias in both hands. Ms. Unk recommended plaintiff start B6 vitamins and stop smoking. (Tr. 470-73).

Plaintiff was seen by Edward Coverstone, M.D., on March 17, 2014, for a cardiology follow-up. Dr. Coverstone reported that plaintiff was doing "poorly" since his last visit with Dr. Zajarias. Plaintiff reported having dyspnea with minimal exertion, some chest pain and pressure with palpitations, and some lightheadedness upon standing. Plaintiff stated that he was compliant with his medications. Physical examination yielded normal results except for trace bilateral pedal edema. With respect to plaintiff's nonischemic cardiomyopathy, Dr. Coverstone found plaintiff euvolemic, continued him on his current medications, and ordered testing given his New York Heart Association class II to III symptoms. Dr. Coverstone assessed plaintiff with mild COPD, well-controlled hypertension, dyslipidemia, and likely sleep apnea. (Tr. 476-77).

Three days later, plaintiff was evaluated for sleep apnea by Christopher Petrey, D.O. Physical examination revealed grade 2 tonsils with narrowed airway,

some edema, and skin tautness of face, arms, and hands. Dr. Petrey concluded that these symptoms, in combination with plaintiff's excessive BMI and positive ANA, were suggestive of sleep apnea with a component of GERD and questionable esophageal motility disorder, and a possible underlying autoimmune disease. Dr. Petrey noted that plaintiff also described symptoms suggestive of Raynaud's phenomenon and believed plaintiff should be evaluated by a rheumatologist and his primary care physician. Dr. Petrey started plaintiff on titration with a CPAP. (Tr. 575-77).

Plaintiff went to the emergency room on May 28, 2014, complaining of tingling in his arms, blurred vision, numbness, weakness, and jaw pain. Plaintiff reported smoking one-half pack of cigarettes daily. Physical examination showed a normal heart rate and rhythm, normal breath sounds, a normal range of motion with no edema or tenderness, normal strength and reflexes, normal Finger-Nose-Finger Test, no pronator drift, normal gait, and 5/5 muscle strength. An EKG yielded normal results. Plaintiff was diagnosed with diabetes mellitus and given insulin. He was discharged the next day. (Tr. 481-87).

Testimony

Plaintiff testified at the hearing held on July 21, 2014. He stated that he stopped smoking about one month before the hearing and was compliant with his medications. At the time of the hearing, plaintiff was 5'6 ½" tall and weighed 200

pounds.  He testified as follows.  Plaintiff's back problems keep him from working.  He can only sit for 20 minutes at a time before he slumps over.  Plaintiff has trouble standing because of weak joints, elbows, and knees.  He can only stand for 10-15 minutes before he has to lean against something or sit down.  Plaintiff has been using a cane for four to five years.  He has daily numbness in his arms, so he can't lift anything.  Plaintiff gets tired and feels weak.  He has trouble breathing because of anxiety and can't ride in cars.  He walks from his house to go fishing.  Plaintiff doesn't like crowds and feels paranoid.  He cleans the house and does laundry, but he has to sit down when his arms and legs get numb.  He feels depressed and hopeless at least three times a week.  Plaintiff has mood swings.  His heart is okay.  (Tr. 48-65).

### Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion.  Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000).  As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or

because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (internal citation omitted).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question.

Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment,

the Commissioner reviews whether the claimant can perform his past relevant work.  If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy.  If not, the Commissioner declares the claimant disabled.  20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding.  Casey v. Astrue 503 F.3d 687, 696 (8th Cir. 2007).  However, the

ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

## The ALJ's Findings

The ALJ issued her decision that plaintiff was not disabled on December 1, 2014. She found that plaintiff had the severe impairments of degenerative disc disease, congestive heart failure, non-ischemic cardiomyopathy, COPD, and major depression with anxiety. However, the ALJ found that plaintiff retained the residual functional capacity (RFC) to perform medium work,[3] with the exception that he could only occasionally climb ladders, ropes, scaffolds, stairs or ramps, and should avoid concentrated exposure to fumes, odors, dust, and gases. The ALJ further found that plaintiff should not interact with supervisors, co-workers, or the public more than frequently. In fashioning plaintiff's RFC, the ALJ determined that his impairments could be expected to produce some of his alleged symptoms; however, she concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible to the extent they were inconsistent with his RFC. The ALJ relied on a vocational expert's testimony to determine that plaintiff could work as a conveyor feeder offbearer, machine feeder, and marker. Because the ALJ determined that these

---

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567.

jobs exist in significant numbers in the national economy, she concluded that plaintiff was not disabled.

## Discussion

Plaintiff argues that substantial evidence does not support the ALJ's determination of his RFC because she did not properly consider all of his limitations. RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). The record must include some medical evidence that supports the RFC. Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000). "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." Lowe v. Apfel, 226 F.3d 969, 973 (8th Cir. 2000) (internal citation omitted).

Plaintiff claims that the ALJ substantially erred when she determined that he could perform a wide range of medium work despite his back and heart problems.

Here, the ALJ properly formulated plaintiff's RFC only after evaluating his credibility and discussing the relevant evidence, including his testimony, the medical evidence, and his daily activities. After consideration of all this evidence, the ALJ concluded that plaintiff retained the capacity to perform medium work, with modifications tailored to his credible limitations. In so doing, she did not substantially err. In addition to the ALJ's thorough assessment of plaintiff's credibility (discussed below), the ALJ also factored into her RFC assessment the objective medical findings of record, including the diagnostic imaging results and physical examination findings, which do not support plaintiff's claimed limitations.

As the ALJ noted, most of plaintiff's physical examinations were normal despite his complaints of back and chest pain. For example, in October of 2012, Dr. Pachalla saw plaintiff for his congestive heart failure. His condition was noted to be stable at that time. Despite plaintiff's complaints of chest pain, fatigue, and shortness of breath, physical examination yielded normal heart rate and rhythm with no murmurs, gallops, or rubs, normal breath sounds, and only trace edema in his lower leg. However, plaintiff was noted to be non-compliant with his therapy and medications and had missed many of his cardiac follow-up appointments. The next month, plaintiff went to the emergency room complaining of chest pain.

However, examination revealed normal heart rhythm, regular breath sounds, no edema in his extremities, and a full range of motion with no inflammation. Plaintiff went back to the emergency room in December of 2012, but examination showed normal heart rate and rhythm, normal breath sounds, no focal pain in any muscle or joint groups, and normal reflexes. During plaintiff's January 24, 2013, visit with Dr. Lazarte for chest pain, Dr. Lazarte noted plaintiff's diagnostic test results showed only mild ischemia, normal coronaries, and only mild diastolic dysfunction. Plaintiff's physical examination was normal, and Dr. Larazte believed that as plaintiff was compliant with his medications, his relative risk was improving because he was responding to current treatment. Plaintiff's cardiologist, Dr. Zajarias, examined plaintiff in February of 2013. Plaintiff's examination was again normal, with a regular heart rate, clear breath sounds, and no edema.

Plaintiff's physical examination upon his admission to the emergency room in June of 2013 for depression also showed normal cardiac rhythm and heart sounds, normal breath sounds, a normal range of motion, no edema, and normal muscle tone. Plaintiff saw Dr. Coole in July of 2013 for swelling and joint pain. Although Dr. Coole observed some swelling in the extremities, plaintiff's examination was otherwise within normal limits. At his next visit with Dr. Coole two weeks later, plaintiff's edema was gone, and his physical examination was within normal limits, with a regular heart rate and rhythm and normal breath

sounds.  Dr. Coole's examination of plaintiff in September of 2013 also yielded normal results, with normal heart and breath sounds and no edema or tenderness. She assessed plaintiff's congestive heart failure as stable.

Plaintiff was evaluated for lupus in December of 2013.  Once again, physical examination revealed normal lung and heart sounds, no motor or sensory defects with Tinel's maneuver failing to increase numbness or tingling in hands, no edema, and a normal functional range of motion with joints, wrists, elbows, shoulders, knees, ankle, and feet all normal in appearance.  Plaintiff's next emergency room visit was in May of 2014, just two months before his hearing with the ALJ, for tingling in his arms, numbness and jaw pain.  His physical examination at that time showed a normal heart rate and rhythm, normal breath sounds, a normal range of motion with no edema or tenderness, normal strength and reflexes, normal Finger-Nose-Finger test, no pronator drift, normal gait, and 5/5 muscle strength.

Plaintiff's numerous normal physical examinations, despite his complaints of back and heart problems, were properly considered by the ALJ as one factor when formulating his RFC.  See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain).  Although plaintiff complains that none of these evaluations included a "complete musculoskeletal or neurological

examination,"[4] "there is no requirement than an RFC finding be supported by a specific medical opinion." <u>Myers v. Colvin</u>, 721 F.3d 521, 526-27 (8th Cir. 2013). Moreover, plaintiff submitted no such opinion regarding his limitations. "The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." <u>Goff</u>, 421 F.3d at 790. Here, where the RFC is supported by substantial evidence on the record as a whole, the ALJ was not required to obtain a specific "musculoskeletal or neurological examination" or a doctor's opinion regarding how much plaintiff can carry or how long he can stand or sit to determine his work-related limitations. <u>Hensley v. Colvin</u>, 829 F.3d 926, 932 (8th Cir. 2016) (ALJ not required to seek additional information from treating physicians or order consultative examination where medical record is adequately developed); <u>Martise v. Astrue</u>, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ required to supplement record only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled); <u>Thornhill v. Colvin</u>, 4:12CV1150

---

[4] Although plaintiff argues that Dr. Leung's evaluation was the only "detailed" evaluation in the record, he admits that this examination was conducted almost two years before his alleged onset date. As such, it was not error for the ALJ to rely on other, substantial evidence of record regarding plaintiff's limitations. Moreover, Dr. Leung's examination also showed normal cardiac rate and rhythm, clear lungs, normal reflexes, and no edema. Plaintiff was able to tandem walk and hop, heel walk, toe walk, and squat. Although he had a decreased range of motion in his lumbar spine and knees, he had no muscle atrophy or spasms, his pinch, grip, arm, and leg strength were 4+/5, and he had no difficulties getting on and off the exam table. Thus, even if this examination occurred during the relevant time period, it does not support the degree of limitation claimed by plaintiff.

CEJ, 2013 WL 3835830, at *11-12 (E.D. Mo. July 24, 2013) (numerous unremarkable physical examinations with normal gait and no evidence of abnormalities in joints or spine or range of motion limitation or muscle tenderness supported ALJ's determination that claimant could perform a range of medium work despite lack of specific opinion from doctor indicting claimant's work-related limitations).

Plaintiff points to his evaluation in March of 2014 by cardiologist Dr. Coverstone -- who noted that plaintiff was doing "poorly" since his last visit with Dr. Zajarias -- as evidence that the ALJ erred in her RFC assessment.[5]  However, despite this notation plaintiff's physical examination was again normal, except for trace bilateral pedal edema.  Dr. Coverstone ordered testing given plaintiff's "New York Heart Association class II to III symptoms."[6]  While "[a] treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight," Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000), the Commissioner "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence."

---

[5] The ALJ considered this opinion when formulating the RFC, but mistakenly referred to it as the opinion of Dr. Zajarias.  Drs. Coverstone and Zajarias are both cardiologists in Washington University's Cardiovascular Division.

[6] This means plaintiff's symptoms were between slight (class II) and marked (class III).  However, "a NYHA classification does not correspond to any specific RFC finding."  Campbell v. Colvin, 4:15CV1330 NCC,  2016 WL 3854538, at *4 (E.D. Mo. July 15, 2016).  To the extent plaintiff argues that his RFC is erroneous merely because his cardiac symptoms were described by Dr. Coverstone as class II to class III, this argument is rejected.

Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (quoting Goff, 421 F.3d at 790). Here, Dr. Coverstone's comment that plaintiff was doing "poorly" is inconsistent with his examination of plaintiff, which yielded normal results, and his assessment that plaintiff's COPD was mild, his hypertension was "well-controlled," plaintiff's fluids were all normal with respect to his cardiomyopathy, and his cardiac symptoms were only slight (class II) to marked (class III). As the Eighth Circuit has recognized, a class III classification does not mandate a finding of disability. KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 372 (8th Cir. 2016) ("Although a classification of . . . class III heart failure could support a finding of disability, [claimant's] classification did not require the ALJ to make such a finding in this case."). Here, where plaintiff's symptoms were only described as between class II – which indicates only slight symptoms – and class III, it was not error for the ALJ to consider the record as whole and determine that plaintiff was able to perform modified medium work. See Fentress v. Berryhill, 854 F.3d 1016, 1020-21 (8th Cir. 2017) (treating physician's opinion properly discounted where claimant had numerous normal physical examinations and diagnostic test results demonstrated plaintiff's symptoms were well-controlled when compliant with treatment recommendations).

Plaintiff also argues that his use of, and prescription for, a cane is evidence that the ALJ substantially erred in her assessment of his RFC. The ALJ considered

plaintiff's use of a cane but ultimately discounted its significance in her formulation of the RFC because plaintiff requested the prescription so he could take his cane on an airplane. Stated otherwise, Dr. Coole wrote plaintiff a prescription for a cane he was already using at his request. Plaintiff admitted to Dr. Leung back in 2010 that he used the cane because "he just had it," not because a doctor had prescribed its use for him. While Dr. Coole accommodated plaintiff and gave him the requested prescription, his physical examination during that visit was again normal, with normal heart and breath sounds and no edema or tenderness. Dr. Coole assessed plaintiff's congestive heart failure as stable at that time. Given that plaintiff was found to have no motor or sensory defects, no edema, and a normal functional range of motion with joints, wrists, elbows, shoulders, knees, ankle, and feet in December of 2013 and a normal range of motion with no edema or tenderness, normal strength and reflexes, normal gait, and 5/5 muscle strength in May of 2014 (less than two months before his hearing with the ALJ), the ALJ did not substantially err in her limited consideration of plaintiff's use of a cane when formulating his RFC. Moreover, the ALJ did not simply adopt a medium work RFC wholesale, but rather modified it to reflect that plaintiff should only occasionally climb ladders, ropes, scaffolds, stairs or ramps, thereby reflecting plaintiff's credible limitations. Under these circumstances, the ALJ did not substantially err in formulating plaintiff's RFC.

The ALJ's RFC was also substantially supported by plaintiff's diagnostic test results. Plaintiff's tests from his emergency room visit in November of 2012 showed only mild ischemia, normal coronaries, and only mild diastolic dysfunction. A CT scan of his head taken the next month was also normal, and plaintiff's BNP test results in February of 2013 were all within normal limits. Imaging of plaintiff's knees, cervical spine, and lumbar spine in December of 2013 revealed only minimal, bilateral joint space narrowing of the knees, moderate multilevel cervical degenerative disc disease most severe at C5-C6 through C7-T1, and mild degenerative disc disease at L4-L5. Plaintiff's EKG taken in May of 2014 was normal. These objective findings support the ALJ's determination that plaintiff could perform a range of medium work with limitations. See Steed v. Astrue, 524 F.3d 872, 875-76 (8th Cir. 2008) (diagnostic tests indicating claimant's back problems were mild to moderate supported ALJ's RFC assessment despite fact that medical evidence was "silent" as to work-related restrictions; claimant's failure to provide this evidence cannot be held against the ALJ where the medical evidence supports the ALJ's decision).

Plaintiff also argues that the ALJ failed to take into account his subjective complaints of pain when formulating his RFC. Although an ALJ is never free to ignore a claimant's subjective complaints of pain, they may be discounted if there are inconsistencies in the record as a whole. See Buckner v. Astrue, 646 F.3d 549,

558 (8th Cir. 2011). Here, the ALJ found plaintiff's allegations regarding his limitations to be less than fully credible, and her credibility analysis is well-supported by substantial evidence on the record as a whole for the reasons discussed below. The ALJ's RFC assessment takes into account plaintiff's credible limitations of record and is supported by substantial evidence on the record as a whole.

Plaintiff also argues that the ALJ improperly assessed his credibility. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall, 274 F.3d at 1218. I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." Vester v. Barnhart, 416 F.3d 886, 889 (8th Cir. 2005). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the Polaski standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." Masterson v. Barnhart, 363 F.3d 731, 738–39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence. Id. at 738; see also Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, the

decision should be upheld.  Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ properly evaluated plaintiff's credibility based upon his own testimony, the objective medical evidence of record, plaintiff's daily activities, the conservative nature of his treatment, his lack of compliance with treatment recommendations, and the lack of restrictions set out by treating and examining physicians.  The ALJ summarized plaintiff's testimony regarding his daily activities, subjective allegations of pain, as well as his admitted prolonged tobacco use.  The ALJ was not required to fully credit all of plaintiff's assertions regarding his limitations given his daily activities, which included preparing meals, cleaning house, doing laundry, shopping, travel, and fishing.  Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996).  Instead, she discounted plaintiff's subjective complaints only after evaluating the entirety of the record.  In so doing, she did not substantially err, as subjective complaints may be discounted if inconsistencies exist in the evidence as a whole.  Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994).

In assessing plaintiff's credibility, the ALJ noted that no physician ever rendered an opinion that he was unable to work.  The lack of significant limitations set out by treating and examining physicians is relevant to a determination of disability.  See Goff , 421 F.3d at 792.  The ALJ also noted that plaintiff did not seek or require aggressive treatment for his impairments.  See Clevenger v. Social

Security Administration, 567 F.3d 971, 976 (8th Cir. 2009). The ALJ concluded that plaintiff's subjective complaints of pain were of limited credibility because they were not supported by the objective medical evidence of record, an important factor for evaluating a claimant's credibility. Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995). The ALJ also properly upon plaintiff's non-compliance with treatment recommendations when assessing his credibility. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). Despite his cardiac and respiratory complaints, plaintiff continued to smoke despite being repeatedly advised to quit. "[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medications, seek treatment, and quit smoking." Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006) (internal citations omitted). The ALJ did not err in considering plaintiff's smoking when assessing his credibility. The ALJ also properly considered plaintiff's poor work history and repeated applications for benefits in her credibility assessment. See, Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (ALJ may properly consider a claimant's motivation for secondary gain when assessing credibility); Julin v. Colvin, 826 F.3d 1082, 1087 (8th Cir. 2016) (sporadic work history may properly be considered in ALJ's credibility assessment).

Where, as here, an ALJ seriously considers but for good reasons explicitly

discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination.  <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1147 (8th Cir. 2001). Substantial evidence in the record as a whole supports the ALJ's credibility determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice."  <u>Fentress</u>, 854 F.3d at 1021 (citing <u>Owen v. Astrue</u>, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

Because substantial evidence in the record as a whole supports the ALJ's decision to deny benefits, I will affirm the decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate Judgment in accord with this Memorandum and Order is entered this date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of June, 2017.